UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| VICTOR BERNAL, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 3:19-cv-01321-X |
| CLARENCE T. FOSTER, III, and | § | |
| DANIEL R. WHITE, | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

This is a dispute among co-owners of two car dealerships. Victor Bernal sued co-owners Clarence T. Foster, III and Daniel R. White for a declaratory judgment regarding their respective rights and duties regarding their ownership in the dealerships, and for fraud and breach of fiduciary duty. The Court granted a prior motion to dismiss based on the original complaint being defective.[1] (Doc. 14). The Court allowed Bernal to replead, and that pleading dropped the fraud claim. But here we are again. Foster and White now contend the declaratory judgment claim is moot because the dealership agreements establish the rights and duties of the co-owners. And Foster and White also argue that as members of LLCs, they owe Bernal no fiduciary duty. Bernal claims one of the LLC agreements had his signature forged.

For reasons more fully addressed below, the Court concludes that Bernal failed to plead his forgery allegations with Rule 9 specificity. But this defect is not fatal, as

---

[1] That order was also issued pursuant to an agreement of the parties. (Doc. 14).

the Bernal's declaratory judgment claim is broader than the question of what percentage of the dealerships he owns. And the Court cannot rule on the fiduciary duty claim before Bernal does his final pleading. Accordingly, the Court **GRANTS IN PART** Foster and White's motion to dismiss as to the declaratory judgment claim. The Court **DISMISSES WITHOUT PREJUDICE** the declaratory judgment claim as to Bernal's percentage ownership and gives Bernal 28 days for the limited purpose of repleading this claim to conform to Rule 9. The Court **DENIES** the motion to dismiss as to Bernal's fiduciary duty claim at this time.

## I.    Factual Background

Bernal had a 20-year history in the automobile industry and was interested in owning a Chrysler dealership. He claims that in discussions about co-owning a Chrysler dealership together in Dallas, Foster pledged he would fund the acquisition, Bernal would provide operations management, and they would be 50/50 partners. Bernal claims that Foster formed Metroplex Chrysler, LLC in Pennsylvania without his knowledge and registered Metroplex Chrysler, LLC to do business in Texas. The application to register the LLC in Texas listed Bernal, Foster, and White as governing persons. Shortly before the deal closed in 2017, a Chrysler representative asked Bernal who White was and informed Bernal his ownership interest was 19% according to the closing papers that were submitted to Chrysler.

When Bernal inquired of Foster, Foster told him that White was his partner from a Pennsylvania dealership and could help them expand to other dealerships. Bernal further alleges Foster said each of the three would have a 1/3 interest in the

Dallas dealership and future dealerships.  Bernal claims they did not seek to change the ownership interest before closing in order to not delay the closing, but that there was an understanding they would change the percentage ownership in a separate agreement.  The closing occurred several days late, allegedly because White took additional time to fund the closing.

Separately, Bernal and Foster sought financing of $1 million in December 2017, of which Foster retained $250,000 to resolve a dispute with his Pittsburgh dealership.  After closing, Bernal alleges White wired out $1.5 million and $990,000 of the dealership's working capital.  This left the dealership with only $740,000 in working capital, far less than the $4.5 million Bernal claims Chrysler said was needed.  After an audit, Chrysler's floorplan lender demanded an immediate payment of $1 million to adequately fund working capital, which the owners were unable to provide.  Bernal also sought out additional financing, and claims Foster and White told dealership employees to manipulate the financials to appeal to financiers.

In the summer of 2018, Bernal claims he was presented an opportunity to buy an Infiniti dealership in Torrance, California.  Bernal says he notified Foster and White of the opportunity due to their agreement governing future dealerships.  He also claims he delegated discussions with Infiniti to Foster.  Shortly before closing, the paperwork indicated ownership would be 51% for Foster, 40% for White, and 9% for Bernal.  According to Bernal, Foster's claimed reason for this allocation was that Infiniti was requiring minority ownership—which Bernal believed would not justify a lower ownership interest for him.  Then Foster, according to Bernal, agreed to

execute a side agreement for each partner to own 33% of the Infiniti dealership. They closed on the Infiniti dealership . . . sort of. Like the Chrysler dealership, closing was delayed due to funding, and the seller allegedly seized titles and refused to return them until the sale was fully funded.

Bernal claims he was able to induce Nissan Motor Acceptance Corp. (Nissan) into extending floorplan lending for both the Infiniti and Chrysler dealerships. A Nissan audit resulted in a demand for the partners to inject an additional $1.5 million in working capital. White agreed to provide the infusion, contingent on expelling Bernal from management. That day (March 18, 2019), Foster's attorney sent Bernal a letter informing him that his management positions with both dealerships were terminated. Bernal then requested access to the dealership's books, records, and agreements he was a party to. The response indicated they would provide the information, but Bernal alleges they only provided operating agreements for Metroplex Chrysler, LLC (for the Chrysler dealership in Dallas) and Sherman Oaks, LLC (for the Infiniti dealership in California). Bernal claims the signature on the Metroplex agreement is a forgery and the Sherman Oaks agreement is authentic but has supporting documentation Bernal never saw.

Bernal filed this suit in state court in May 2019 for a declaratory judgment, breach of fiduciary duty, and fraud. Foster and White removed the case to this Court. Bernal alleges that the dealerships continued to struggle following his termination, harming the value of his ownership interest. Bernal amended his complaint and dropped his fraud claim after an order pursuant to an agreement on the original

motion to dismiss.   And White and Foster counterclaimed for fraud, a Texas Securities Act violation, and a constructive trust.

Relatedly, Nissan sued Metroplex, LLC in state court in Dallas County in July 2019 regarding almost $2 million in sales out of trust.[2]  Bernal alleges a similar suit occurred over the Infiniti dealership.  And in August 2019, Metroplex Chrysler, LLC along with Foster and White sued Bernal and others in state court in Tarrant County for fraud, breach of fiduciary duty, and a constructive trust.  The Court then ordered Foster and White to refile their pending motions to dismiss to address whether an abstention doctrine applies.  They did so, and the refiled motion to dismiss is now ripe.

## II.    Legal Background

White and Foster's motion to dismiss is framed as one for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), but it also contends there is no subject matter jurisdiction over the breach of contract claim (a Rule 12(b)(1) argument).  Standing under Article III of the Constitution is jurisdictional, such that the Court must address it before considering the merits of a plaintiff's claims.[3]  Unlike a 12(b)(6) motion, the Court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case on a Rule 12(b)(1) motion.[4]  A court must dismiss the case if it "lacks the statutory or constitutional power to adjudicate the

---

[2] An out of trust sale refers to a sale of a vehicle subject to a loan where the proceeds aren't used to repay the loan.  In the movies, this doesn't end well (except perhaps that Han Solo outlived Jabba the Hutt).  Nonetheless, in real life, these disputes often end up in court.

[3] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 247–48 (5th Cir. 2008).

[4] *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

case."[5]  And the burden is on the party who seeks federal jurisdiction to "clearly allege facts demonstrating that [it] is a proper party to invoke the judicial resolution of the dispute."[6]

Standing requires that a plaintiff establish, for each claim, "(1) that the plaintiff have suffered an 'injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent'; (2) that there is 'a causal connection between the injury and the conduct complained of'; and (3) that the injury is likely to be redressed by a favorable decision."[7]

Under Rule 12(b)(6), the Court evaluates the pleadings by "accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor."[8]  To survive a motion to dismiss, Bernal must allege enough facts "to state a claim to relief that is plausible on its face."[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[11]  "[W]here the well-pleaded facts do not

---

[5] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

[6] *United States v. Hays*, 515 U.S. 737, 743 (1995) (citation omitted).

[7] *Fla. Dep't of Ins. v. Chase Bank of Tex. Nat'l Ass'n*, 274 F.3d 924, 929 (5th Cir. 2001) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

[8] *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015) (citing *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 110–11 (2d Cir. 2012)).

[9] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[11] *Id.*; *see also Twombly*, 550 U.S. at 545 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"[12]

### III.    Analysis

White and Foster's motion to dismiss contends that: (1) the operating agreements establish Bernal's ownership interest, so the declaratory judgment claim is moot; (2) Bernal's allegation that some signatures were forged flunks Rule 9's heightened pleading requirement for fraud, meaning that his declaratory judgment claim fails to state a claim; (3) White and Foster owed a fiduciary duty to Metroplex Chrysler, LLC but not Bernal, meaning that the fiduciary duty claim fails to state a claim; (4) Bernal failed to allege a basis for joint and several liability; and (5) abstention doctrines are inapplicable because the federal and state court proceedings don't overlap.   Bernal responds that: (1) a motion to dismiss cannot resolve allegations of forgery; (2) forgery of one's own signature is not subject to Rule 9's heightened pleading standard, but the overall pleadings meets that higher standard anyway; (3) because there was no proper LLC and they were partners, Foster and White owed Bernal a fiduciary duty;  (4) joint/several liability is proper for a partnership; and (5) the Court should not abstain in favor of the state court proceeding because the state court abated that case while this one proceeds.  The Court takes each argument in turn.

### A.  Abstention

---

[12] *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. Rule 8(a)(2)).

The parties don't agree on much in this lawsuit.  But they do agree that this Court should not abstain in favor of the state court lawsuit where Metroplex Chrysler, LLC sued Bernal.  And the state court agreed with them, abstaining in that case in favor of this one.  The Court acknowledges that the state court suit lacks the presence of Foster and White, which excludes Bernal's claim for an oral side agreement and Foster and White's counterclaims against Bernal.  Accordingly, the Court will not abstain on adjudicating this proceeding in favor of the state court action.

## B.  Declaratory Judgment Claim

Foster and White argue the agreements moot the declaratory judgment claim, and any forgery pleading doesn't meet the Rule 9 test.  Bernal responds that the dismissal stage is too early to resolve the issue of a forged or altered agreement, Rule 9 doesn't apply to forgery of one's own signature, and there is still a genuine dispute on Foster's obligation to supply working capital.  The Court agrees with Foster and White that Rule 9 applies to the forgery allegation and that the live complaint fails to meet the heightened standard, but not all the declaratory judgment issues are tied to the forgery allegations.

First, the Fifth Circuit has made clear that "Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not."[13] "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out."[14]  A sister court, in the Southern District of Texas, has specifically held that

---

[13] *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001).

[14] *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010) (quotation marks omitted).

Rule 9 applies to forgery allegations, even if they are not an element of a claim.[15] There, the court dismissed the conclusory allegations for failure to comply with Rule 9.[16]

This Court agrees with the Southern District of Texas that Rule 9 applies to forgery allegations and that Bernal's live pleading fails to comply with Rule 9.  One reason to require litigants to plead fraud with particularity is that there is "heightened sensitivity to labeling someone a fraudster, and that statements made in court are not actionable as defamation."[17]  These concerns hold true for allegations of forgery.  As a result, Bernal must spell out the "who, what, when, where, and how" of his forgery allegations.[18]  He didn't.  His sum total allegations were as follows: "on July 17, 2019, Foster produced a document described as an operating agreement for an entity called Metroplex, LLC . . . .  Bernal's signature on the Metroplex Agreement is a forgery; he did not sign that document."[19]  This conclusory allegation does not meet the Rule 9 heightened requirements.

Given that Bernal's forgery allegations do not comply with Rule 9, the question is what to do about it.  The Fifth Circuit has indicated that:

> Where averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim

---

[15] *Lopez v. Sovereign Bank, N.A.*, No. CIV.A. H-13-1429, 2014 WL 7446746, at *8 (S.D. Tex. Dec. 31, 2014) ("The plaintiffs have not met Rule 9(b)'s heightened pleading standard because their fraud allegations are general and conclusory and do not identify the "who, what, when, where, and how" as the rule requires.").

[16] *Id.*

[17] *VeroBlue Farms USA, Inc. v. Wulf*, No. 3:19-CV-00764-X, 2020 WL 3036661, at *9 (N.D. Tex. June 5, 2020) (Starr, J.).

[18] *Potter*, 607 F.3d at 1032 (quotation marks omitted).

[19] Doc. 21 at 20.

has been stated. The proper route is to disregard averments of fraud not meeting Rule 9(b)'s standard and then ask whether a claim has been stated. There is a qualification. A district court need not rewrite such a deficient complaint. It may dismiss, without prejudice, placing that responsibility upon counsel.[20]

Here, the forgery allegations are not the entirety of Bernal's declaratory judgment claim. Bernal pointed out in his response brief that his declaratory judgment claim also seeks an adjudication of Foster's duty to supply working capital under the allegedly forged agreement.[21] As a result, even if Bernal acquiesces to the validity of the agreements, his declaratory judgment claim still seeks an adjudication of Foster's duty under the agreements to supply working capital. As such, the Court grants the motion to dismiss without prejudice and will allow Bernal a final opportunity to replead. If he cannot replead the forgery allegations in compliance with Rule 9, those allegations will be subject to dismissal with prejudice (and the only actionable allegations under his declaratory judgment claim will be Foster's duty to supply working capital).

### C.  Fiduciary Duty Claim

Foster and White also claim that, as LLC members, they owed no fiduciary duty to Bernal. Bernal responds that such position impermissibly goes outside the

---

[20] *Lone Star Ladies Inv. Club*, 238 F.3d at 368.

[21] *See* Doc. 21 at 6–7 ("Bernal relied on Foster's representations and asked Foster if they had an agreement to acquire the Chrysler Store as equal partners (i.e. 50/50), with Foster supplying all the required capital for the purchase and operations and Bernal supplying the operations and management experience and expertise as well as valuable industry contacts. Foster responded and confirmed his agreement to be 50/50 partners with Bernal on this basis, and the two shook hands, whereupon Bernal then called the owner of the Chrysler Store and advised he and his partner were ready to proceed with the buy-sell transaction.").

complaint, where Bernal alleges they had a partnership and not an LLC.  The Court concludes both sides are a little bit wrong and this argument is a little bit premature.

True, the Court normally cannot consider matters outside the pleadings and attachments at the motion to dismiss stage.  But Bernal referred to the operating agreements and attached them to his complaint.  The Court could consider the agreements even if Bernal didn't attach them to the complaint and Foster and White attached them to their motion to dismiss.[22]  As a result, the Court may consider the LLC agreements at this stage.

But considering the agreements is different than accepting them as true if there is an allegation that one of the agreements has a forged signature and the other has additional attachments Bernal never saw.  And this is especially true when the Court is requiring Bernal to replead that forgery allegation to comply with Rule 9. Accordingly, the Court Foster and White's motion to dismiss the breach of fiduciary duty claim.[23]

IV.   Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** Foster and White's motion to dismiss as to Bernal's declaratory judgment claim, **DISMISSES WITHOUT PREJUDICE** the declaratory judgment claim as to Bernal's percentage

---

[22] *See Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

[23] Foster and White also moved to dismiss the complaint's allegation of joint and several liability because it offered no basis for joint and several liability.  The Court cannot undertake such an assessment when Bernal must replead anyway and the Court cannot yet determine whether any claim would survive that would support joint and several liability.  As a result, the Court also denies Foster and White's motion to dismiss the joint and several liability allegations at this time.

ownership, and gives Bernal 28 days for the limited purpose of repleading this claim to conform to Rule 9.  The Court **DENIES** the motion to dismiss as to Bernal's fiduciary duty claim at this time.

      **IT IS SO ORDERED** this 15th of October 2020.


_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE